Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT STEWART,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>DSP GROUP, INC., KENNETH H. TRAUB, OFER ELYAKIM, TOM LACEY, CYNTHIA PAUL, YAIR SEROUSSI, NORM P. TAFFE, and SHIRA FAYANS BIRENBAUM,<br><br>　　　Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Robert Stewart ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1.　　This is an action against DSP Group, Inc. ("DSP" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection

1

with the proposed acquisition (the "Proposed Transaction") of DSP by Synaptics Incorporated ("Synaptics").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of DSP common stock.

7. Defendant DSP is a fabless semiconductor company that provides wireless chipset solutions. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "DSPG."

8. Defendant Kenneth H. Traub ("Traub") is Chairman of the Board of the Company.

9. Defendant Ofer Elyakim ("Elyakim") is Chief Executive Officer and a director of the Company.

10. Defendant Tom Lacey ("Lacey") is a director of the Company.

11. Defendant Cynthia Paul ("Paul") is a director of the Company.

12. Defendant Yair Seroussi ("Seroussi") is a director of the Company.

13. Defendant Norm P. Taffe ("Taffe") is a director of the Company.

14. Defendant Shira Fayans Birenbaum ("Birenbaum") is a director of the Company.

15. Defendants Traub, Elyakim, Lacey, Paul, Seroussi, Taffe, and Birenbaum are collectively referred to herein as the "Individual Defendants."

16. Defendants DSP and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

17. On August 30, 2021, DSP and Synaptics announced the signing of a definitive agreement whereby Synaptics would acquire DSP for $22.00 per share in an all-cash transaction. The press release announcing the Proposed Transaction states, in pertinent part:

> **Synaptics to Acquire DSP Group, Expanding Leadership in Low Power AI Technology**
>
> **Further Accelerates IoT Diversification While Strengthening Wireless Connectivity Portfolio**
>
> August 30, 2021 08:10 ET | Source: DSP Group, Inc.
>
> SAN JOSE, Calif., Aug. 30, 2021 (GLOBE NEWSWIRE) -- Synaptics Incorporated (Nasdaq: SYNA) and DSP Group, Inc. (Nasdaq: DSPG) today announced the signing of a definitive agreement, unanimously approved by the boards of directors of both companies, whereby Synaptics acquires DSP Group, a

3

leading global provider of voice and wireless chipset solutions for converged communications, at $22.00 per share in an all-cash transaction. The combination is anticipated to generate annual run rate synergies of $30 million for the new entity to be realized within 12 months of closing and is immediately accretive to Synaptics' non-GAAP earnings. The transaction is expected to be financed through a combination of cash on hand and a fully committed, incremental debt financing arrangement with a projected close by the end of calendar year 2021, subject to DSP Group shareholder approval and customary closing conditions.

DSP Group has leadership positions across multiple markets in the Internet of Audio Things (IoAT) with significant growth opportunities in low power SmartVoice, unified communications & collaboration, and wireless IoT devices. Most of these solutions are quite relevant to Synaptics' existing customer base, furthering the strategy of cross-selling portfolio devices.

Synaptics recently announced its Low Power Edge AI initiative, which opens a significant long-term opportunity with ABI research predicting approximately 2.5 billion TinyML units to be sold by 2030. The addition of DSP Group's best-in-class SmartVoice products to Synaptics' Katana smart vision platform creates a complete portfolio that can both serve existing customer needs and address the significant future market. In addition, the combination further strengthens Synaptics' industry-leading wireless connectivity portfolio by adding DECT Ultra Low Energy (ULE), which enables a fully-featured intelligent home security solution.

"We continue to invest in technologies that tilt our product mix toward IoT applications," said Michael Hurlston, President and CEO of Synaptics. "DSP Group's expertise in SmartVoice and ULE wireless solutions, coupled with Synaptics' leadership position in far-field speech recognition and IoT directed Wi-Fi/BT combos enables us to deliver increasingly differentiated solutions to our combined customer base, while positioning us to lead the transition to AI enabled devices at the edge of the network."

"We are excited to join forces with Synaptics, a recognized leader in products for IoT. This combination provides a great result for our shareholders who have supported us through this journey, delivering meaningful and certain value," said Ofer Elyakim, CEO of DSP Group. "Our complementary portfolios together with the combination of our world-class engineering teams creates an exciting opportunity for DSP Group's core technology to extend further into our existing customers' product portfolio."

"The DSP Group board of directors unanimously supports this transaction as it represents an excellent outcome for our shareholders," commented Ken Traub, Chairman of the Board of Directors, DSP Group. "We would like to thank DSP Group's management and employees for their dedication to executing our strategy and congratulate them on this exciting achievement."

**Advisors**

Goodwin Procter LLP is serving as legal counsel and Barclays is providing committed financing to Synaptics. Goldman Sachs & Co. LLC is serving as financial advisor and Morrison & Foerster LLP is serving as legal counsel to DSP Group.

\*       \*       \*

**About Synaptics Incorporated:**

Synaptics (Nasdaq: SYNA) is changing the way humans engage with connected devices and data, engineering exceptional experiences throughout the home, at work, in the car, and on the go. Synaptics is the partner of choice for the world's most innovative intelligent system providers who integrate multiple experiential technologies into platforms that make our digital lives more productive, insightful, secure, and enjoyable. These customers combine Synaptics' differentiated technologies in touch, display, and biometrics with a new generation of advanced connectivity and AI-enhanced video, vision, audio, speech, and security processing. Follow Synaptics on LinkedIn, Twitter, and Facebook, or visit synaptics.com.

**About DSP Group**

DSP Group®, Inc. (NASDAQ: DSPG) is a global leader in wireless chipsets for a wide range of smart-enabled devices. The company was founded in 1987 on the principles of experience, insight and continuous advancement which enable the company to consistently deliver next-generation solutions in the areas of voice, audio, video and data connectivity. DSP Group, an expert in voice processing, invests heavily in innovation for the smart future and designs leading-edge semiconductor technology that is enabling our customers to develop a new wave of products that bring enhanced user experiences through innovation. For more information, visit www.dspg.com.

18.     On October 25, 2021, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

19.     The Proxy Statement, which recommends that DSP shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) DSP's financial projections; (ii) the financial analyses performed by DSP's financial advisor, Goldman

5

Sachs & Co. LLC ("Goldman Sachs"), in connection with its fairness opinion; and (iii) potential conflicts of interest involving Company insiders.

20. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Reasons for the Merger; Recommendation of Our Board of Directors; (iii) Management Projections; and (iv) Opinion of the Company's Financial Advisor.

21. Unless and until the material misstatements and omissions (referenced below) are remedied before the November 29, 2021 shareholder vote on the Proposed Transaction, DSP shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning DSP's Financial Projections

22. The Proxy Statement omits material information concerning DSP's financial projections.

23. With respect to the Company's financial projections, the Proxy Statement fails to disclose: (1) all line items underlying the Company's financial projections; and (2) a reconciliation of all non-GAAP to GAAP metrics.

24. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the

6

Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

25. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

26. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Goldman Sachs' Analyses

27. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Goldman Sachs.

28. The Proxy Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 8.0% to 9.0%, (ii) perpetuity growth rates ranging

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Oct. 26, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

from 2.5% to 3.5%, and (iii) multiples ranging from 2.9x to 4.2x; (2) the terminal values for the Company; and (3) the Company's current net cash.

29.  The Proxy Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Present Value of Future Share Price Analysis*": (1) the individual inputs and assumptions underlying the (i) multiples of 2.0x to 3.0x, and (ii) discount rate of 8.5%; (2) the Company's net cash as of December 31 for each of the fiscal years 2021 to 2024; and (3) the number of the Company's estimated fully diluted shares as of December 31, adjusted for share repurchases for each of the fiscal years 2021 to 2024.

30.  With respect to Goldman Sachs' "*Selected Companies Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each company Goldman Sachs observed in its analysis.

31.  The valuation methods, underlying assumptions, and key inputs used by Goldman Sachs in rendering its purported fairness opinion must be fairly disclosed to DSP shareholders. The description of Goldman Sachs' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, DSP shareholders are unable to fully understand Goldman Sachs' fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

32.  The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

8

33. The Proxy Statement fails to disclose the details of all post-transaction employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

34. The Proxy Statement further fails to disclose whether and what steps were taken to avoid and prevent any potential conflicts of interest from affecting such communications.

35. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

36. The Proxy Statement also fails to disclose the extent to which Synaptics' proposals or indications of interest mentioned management retention or equity participation in the combined company during the sales process.

37. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

38. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

39. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of

9

the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

40. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

41. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

42. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

43. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

44. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

45. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy

Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

48. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 26, 2021                    Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
           zhalper@halpersadeh.com

*Counsel for Plaintiff*